LAKESIDE OIL COMPANY, INC., Respondent, v. SLUTSKY, Appellant.

*September 11—October 6, 1959.*

For the appellant there was a brief by *Raskin, Zubrensky & Padden* of Milwaukee, and oral argument by *Max Raskin.*

For the respondent there was a brief and oral argument by *Charles L. Goldberg* and *Francis X. Krembs,* both of Milwaukee.

HALLOWS, J. Slutsky contends the contract constitutes a general restraint of trade and is therefore illegal under sec. 133.01, Stats. In *Pulp Wood Co. v. Green Bay Paper & Fiber Co.* (1914), 157 Wis. 604, 147 N. W. 1058, this court discussed the "rule of reason" applicable to cases within the general purview of this section and pointed out that the validity of a particular contract depended upon the facts and the extent to which competition was restricted or trade obstructed. The case of *State v. Lewis & Leidersdorf Co.* (1930), 201 Wis. 543, 230 N. W. 692, cited by the defendant, applies to an entirely different set of facts and is not in point here. This contract on its face is not illegal under sec. 133.01.

Contracts not to compete after a term of employment being in the general class of contracts in restraint of trade may be illegal if the restraint is unreasonable. Restatement, 2 Contracts, pp. 987, 988, secs. 514, 515. But a contract by an employee not to compete with his employer after a term of employment within such territory and during such time as may be reasonably necessary for the protection of the employer without imposing undue hardship on the employee is a reasonable restraint. Restatement, 2 Contracts, p. 995, sec. 516; 36 Am. Jur., Monopolies, Combinations, Etc., p. 554, sec. 78; *Eureka Laundry Co. v. Long* (1911), 146 Wis. 205, 131 N. W. 412; 28 Am. Jur., Injunctions, p. 604, sec. 105.

In 1957 the legislature enacted sec. 103.465, Stats., which provided that a covenant by an employee not to compete with his employer after the term of his employment within a speci-

fied territory and during a specified time is lawful and enforceable if the restrictions imposed are reasonably necessary for the protection of the employer. This section also provides that such restrictive covenant imposing an unreasonable restraint is void and unenforceable even as to so much of the covenant or performance as would be a reasonable restraint. Prior to the passage of this section this court held in *Fullerton Lumber Co. v. Torborg* (1955), 270 Wis. 133, 70 N. W. (2d) 585, that such a contract imposing an unreasonable restraint would be enforced to the extent that such restraint was reasonable. The rationale was that, when the terms of a restrictive covenant were not otherwise invalid, only the excess of territory or time was contrary to public policy and unenforceable. The rule respecting the unenforceability of unreasonable restraints not to compete laid down in the *Torborg Case* has been changed by sec. 103.465.

However, this section does not change the prior law of what constitute unreasonable restraints because the section only requires the restrictions as to time and place to be reasonably necessary for the protection of the employer. If such a contract is void for other reasons, such as public policy, or sec. 133.01 (1), Stats., or creates an undue hardship upon the employee, a court of equity will not enforce it.

Contracts not to compete after a term of employment have been the subject matter of much litigation in the United States. There is a multitude of cases collected in the various textbooks, and especially enlightening annotations are to be found in 9 A. L. R. 1456, 20 A. L. R. 861, 29 A. L. R. 1331, 52 A. L. R. 1362, and 41 A. L. R. (2d) 15. However phrased, the rule requires that a restrictive covenant not to compete after a term of employment should be reasonably necessary for the protection of the legitimate interests of the employer and at the same time should not be oppressive and harsh on the employee or injurious to the interests of the general public. This is the rule in Wisconsin. *Eureka*

*Laundry Co. v. Long, supra; Milwaukee Linen Supply Co. v. Ring* (1933), 210 Wis. 467, 246 N. W. 567.

The first question to be determined under the rule is whether there is a need for any restriction of the activities of the defendant for the protection of the plaintiff. An employer is not entitled to be protected against legitimate and ordinary competition of the type that a stranger could give. There must be some additional special facts and circumstances which render the restrictive covenant reasonably necessary for the protection of the employer's business. Many cases have found such special facts in the nature of the relationship between the employee and the customers of the employer. This is known as the customer-contact theory. See Anno. 41 A. L. R. (2d) 15. If under this theory the most-important single asset of most businesses is their stock of customers, the protection of this asset is the legitimate interest of the employer.

Here Slutsky was hired as a salesman to develop customers for the plaintiff. The mere opportunity of Slutsky to become acquainted with the customers would not determine a reasonable necessity, but Slutsky's personal relationship with the customers, whom he obtained by his own personality and salesmanship and whom, in most cases, the plaintiff did not know personally, amounted to such control or influence that Slutsky would be able to take such customers away from the plaintiff. Slutsky not only developed the customers but he also serviced them. The plaintiff's business is highly competitive; there is very little or no variation in price or difference in the products sold. Sales made by Slutsky were due not to price or the fact that they involved the plaintiff's product but to the customers' confidence in Slutsky or his personal relationship with the customers. To his customers Slutsky was identified with the plaintiff's business. This was due in part because he was the main contact with the customers; the sales took place primarily at the customer's home

or place of business. He was no mere order taker but a salesman with some authority and standing. Under such circumstances the plaintiff has a great need for protection from the competition of his former employee. Some or most of these elements were recognized in *Eureka Laundry Co. v. Long* and *Fullerton Lumber Co. v. Torborg, supra.*

The defendant argues he did not become the possessor of trade secrets or acquire any special knowledge so as to be in a position to damage the plaintiff. This argument is generally advanced in cases involving an employee's breach of his affirmative promise to work for the employer and no covenant not to compete exists. In such cases the question is the damage caused by the defendant by the breach of his affirmative promise. That is not the case here. If Slutsky had possessed technical trade secrets that fact would be an additional ground for the necessity of protecting the plaintiff. The defendant, however, does retain the advantage of some special knowledge of the source of supply, methods of distribution, and of the names and special needs of the plaintiff's customers. He had access to the records of the plaintiff and received on-the-job training. Slutsky knew nothing about the petroleum-products industry when he was hired by the plaintiff. Undoubtedly he believed that he had acquired enough skill and experience in the plaintiff's type of business during his fifteen months of employment to enable him to start a competing business for himself. This is not a suit to enjoin Slutsky from using ordinary business methods or generally obtainable information or his talents as a salesman.

Slutsky was paid to develop customers for the plaintiff. He should not now be allowed to take such customers away from the plaintiff without giving his former employer a reasonable chance to keep them. This raises the question of whether the restriction of two years is reasonable. Reasonableness in this respect depends upon the period of time re-

quired to obliterate in the minds of the plaintiff's customers the identification formed during the period of the defendant's employment. After what period of time will a customer cease to be influenced in regard to the plaintiff's business by the personal relationship with Slutsky? An analysis of the cases on this point indicates that when an employee's contacts with the customers are regular and frequent a shorter period of time is needed by the employer than when, as here, the contacts are made at relatively long intervals. The plaintiff's customers did not buy fuel oil to heat their homes daily, weekly, or monthly but generally on a heating-season basis. In *Eureka Laundry Co. v. Long, supra,* a two-year restraint was held reasonable for a route salesman making frequent and regular customer contacts. Many cases have held two years to be reasonable under such circumstances. See cases in Anno. 41 A. L. R. (2d) 15, at page 179. Two years under the facts of this case cannot be held to be an unreasonable length of time in which to allow the plaintiff to protect his business from the defendant.

The next question is whether the restraint is reasonable as to territory. Slutsky made sales in Milwaukee, Waukesha, and Dane counties. Seventy-five per cent of the plaintiff's business is done in Milwaukee county. Restriction is limited to Milwaukee county and does not include other territory in which the plaintiff does business and in which Slutsky was active. The restriction is confined to the area where Slutsky principally operated. It was stated by this court in *Wisconsin Ice & Coal Co. v. Lueth* (1933), 213 Wis. 42, 250 N. W. 819, that such a restriction would be proper if limited to such territory as constituted the field of the employee's activities but could go no further. On the facts of that case it was held that the restriction involved was broader than was called for by the necessities of the case. Considering the area of the plaintiff's business, and especially the area of the defendant's activities, the nature of the products, and the

other facts, this restriction is not broader than is reasonably necessary.

The defendant contends that the enforcement of the covenant would cause serious and harmful consequences to the defendant because of his high blood pressure and his limited schooling. Testimony is clear that the defendant can engage in any business which does not require strenuous physical effort. The defendant is not prevented from engaging as a salesman or as a proprietor of a business or in any other occupation which does not require physical effort. Slutsky's health does not require that he must engage only in the sale of petroleum products in Milwaukee county. Slutsky is a high-school graduate and a successful salesman. He has managed to acquire ownership of his home and some income-producing real estate. At age forty, and even without a college education, there is no great hardship on him to use his talents as a salesman in other fields of endeavor.

In determining the harshness of a restrictive covenant on an employee this court can take judicial notice of present prevailing conditions of employment and the special training of the defendant for the specific occupation. *Milwaukee Linen Supply Co. v. Ring, supra.* Here the defendant has only fifteen months' experience in this business, all of which he acquired in the employment of the plaintiff. He brought no special knowledge, trade secrets, or experience in the industry to the plaintiff. What he has learned he has learned from his employment by the plaintiff. Neither are we in an economic depression when jobs are scarce. While the keeping of his promise may be inconvenient to the defendant and may now be undesirable from his standpoint, it is not unduly harsh or oppressive on him in relation to the relatively greater harm to the employer if the covenant is not enforced.

In considering the reasonableness in respect to the interest of the general public there must be weighed the interest of the public in having access to the employee's particular serv-

ices during the time and in the area restricted with the benefits that accrue to the public from such restrictive covenants in creating opportunities for employment. Employment opportunities are a concern of the general public. Likewise this contract does not create any shortage of employees or of this type of service or stifle competition or create a monopoly. The plaintiff is a small company. For most of the time the defendant worked for the plaintiff he was the sole salesman. Whether the defendant competes or does not compete with the plaintiff will have no effect on the public generally. The enforcement of this covenant will not create any danger that the defendant might become a public charge. He has ability as a salesman, in which occupation he can support himself and his family without causing damage to the plaintiff, which he agreed not to do.

The plaintiff contends the findings and conclusions are not supported by the evidence. It is true that the finding as to the exact number of accounts which the defendant developed is not sustained by the evidence. However, the record does establish the defendant developed 30 to 40 residential accounts and seven industrial and commercial accounts. This appears to be a partial list. The exact number of customers is not material in this case. The discrepancy in the finding is unimportant and can be disregarded. *Lamberson v. Lamberson* (1921), 175 Wis. 398, 184 N. W. 708; sec. 274.37, Stats. The other findings objected to are either supported by the evidence or are reasonable inferences which the trial court could draw from the evidence before it.

The last contention of the defendant is that the plaintiff failed to plead and prove that his injury is irreparable and that there is no adequate remedy at law. However, the complaint alleges that irreparable damage will accrue from the breach of the contract by the defendant and the damage from such breach is impossible to determine. It is true that the plaintiff proved no actual damage with the exception of the

loss of one account. It is reasonable to assume that actual damage was prevented because a temporary injunction was granted within ten days after the defendant's company commenced business. In seeking an injunction it is not necessary to prove that the plaintiff has suffered irreparable damage but only that he is likely to suffer such damage. The remedy at law may be inadequate because of the difficulty or impossibility of measuring the damages. *Butterick Publishing Co. v. Rose* (1910), 141 Wis. 533, 124 N. W. 647. These rules are well established and fundamental in equity jurisprudence.

The purpose of an injunction is to prevent damage, not to compensate for it. The defendant agreed not to cause any damage to the plaintiff. Such damage is threatened and would be irreparable in its very nature. A court of equity would grant it special relief in such a case.

*By the Court.*—Judgment appealed from is affirmed.